NO. 22-30407

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

JOHN LOUSTEAU
*Plaintiff – Appellant*
v.

HOLY CROSS COLLEGE, INC. CONGREGATION OF
HOLY CROSS MOREAU PROVINCE, INC., INCORRECTLY
NAMED AS CONGREGATION OF HOLY CROSS SOUTHERN
PROVINCE, INC.
*Defendants – Appellees*

---

APPEAL FROM THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NO. 2:21-cv-1457

---

ORIGINAL BRIEF OF DEFENDANTS-APPELLEES

---

William P. Gibbens, 27225
Ian Atkinson, 31602
Benjamin O. Flaxenburg, 37682
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone:  (504) 680-6050
Facsimile:  (504) 680-6051
billy@semmlaw.com
ian@semmlaw.com
benjamin@semmlaw.com

i

## CERTIFICATE OF INTERESTED PERSONS

The undersigned Counsel of Record certifies that the following listed persons and entities are described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff/Appellant:

   a. John Lousteau (Plaintiff/Appellant)

2. Counsel for Plaintiff/Appellant:

   a. Frank E. Lamothe, III (La. Bar # 07945)
      Lamothe Law Firm, LLC
      400 Poydras Street, Ste. 1760
      New Orleans, Louisiana 70130
      Telephone: (504) 704-1414
      felamothe@lamothefirm.com
      (District Court and Fifth Circuit)

   b. Kristi S. Schubert (La. Bar. # 34870)
      Lamothe Law Firm, LLC
      400 Poydras Street, Ste. 1760
      New Orleans, Louisiana 70130
      Telephone: (504) 704-1414
      kschubert@lamothefirm.com
      (District Court and Fifth Circuit)

   c. Julien G. Lamothe (La. Bar. # 38313)
      400 Poydras Street, Ste. 1760
      New Orleans, Louisiana 70130
      Telephone: (504) 704-1414
      jlamothe@lamothefirm.com
      (District Court and Fifth Circuit)

   d. Kevin M. Hastings, *pro hac vice* (Wa. Bar # 42316)
      Pfau Cochran Vertetis Amala, PLLC
      909 A. Street, Ste. 700
      Tacoma, Washington 98402

kevin@pcvalaw.com

    e. Michael T. Pfau, *pro hac vice* (Wa. Bar # 24649)
       403 Columbia Street, Ste. 500
       Seattle, Washington 98104
       Telephone:  (206) 794-2882
       michael@pcvalaw.com

3. Defendants/Appellees:

    a. Holy Cross College, Inc., Congregation of Holy Cross Moreau Province, Inc., incorrectly named as Congregation of Holy Cross Southern Province, Inc.

4. Counsel for Defendants/Appellees:

    a. William P. Gibbens (La. Bar # 27225)
       Schonekas, Evans, McGoey & McEachin, LLC
       909 Poydas Street, Ste. 1600
       New Orleans, Louisiana 70112
       Telephone:  (504) 680-6050
       billy@semmlaw.com
       (District Court and Fifth Circuit)

    b. Ian L. Atkinson (La. Bar # 31605)
       Schonekas, Evans, McGoey & McEachin, LLC
       909 Poydas Street, Ste. 1600
       New Orleans, Louisiana 70112
       Telephone:  (504) 680-6050
       ian@semmlaw.com
       (District Court and Fifth Circuit)

    c. Benjamin O. Flaxenburg (La. Bar # 37682)
       Schonekas, Evans, McGoey & McEachin, LLC
       909 Poydas Street, Ste. 1600
       New Orleans, Louisiana 70112
       Telephone:  (504) 680-6050
       benjamin@semmlaw.com
       (District Court and Fifth Circuit)

d.  Anthony D. Dougherty, *pro hac vice*
    Archer & Greiner, P.C.
    1211 Avenue of  the Americas, Ste. 2750
    New York, New York 10036
    Telephone:  (212) 682 4940
    adougherty@archerlaw.com

e.  Linda S. Roth, *pro hac vice*
    Archer & Greiner, P.C.
    1211 Avenue of  the Americas, Ste. 2750
    New York, New York 10036
    Telephone:  (212) 682 4940
    lroth@archerlaw.com

f.  Trevor A. Prince, Jr. *pro hac vice*
    Archer & Greiner, P.C.
    1211 Avenue of  the Americas, Ste. 2750
    New York, New York 10036
    Telephone:  (212) 682 4940
    tprince@archerlaw.com

5.  Presiding U.S. District Judge for the Eastern District of Louisiana:

The Honorable Jay C. Zainey
United States District Court
Eastern District of Louisiana
500 Poydras Street, C455
New Orleans, Louisiana 70130
Telephone:  (504) 589-7590

Respectfully submitted,

*/s/ Ian L. Atkinson*
Ian L. Atkinson
Attorney of Record for Defendants/Appellees

# STATEMENT OF ORAL ARGUMENT

This appeal presents the sole issue of whether Act 322 constitutionally revived Appellant's prescribed claim. Because that issue is directly foreclosed by Louisiana Supreme Court case law holding that "the Legislature is without the authority to revive a prescribed claim,"[1] oral argument is unnecessary. This case can be disposed of on the briefs through the straightforward application of binding Louisiana Supreme Court precedent.

---

[1] *Elevating Boats, Inc. v. St. Bernard Parish*, 00-3518 (La. 9/5/01), 795 So.2d 1153, 1164.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT OF ORAL ARGUMENT ................................................................. v

TABLE OF CONTENTS ...................................................................................... vi

TABLE OF AUTHORITIES ............................................................................... viii

STATEMENT OF THE CASE ................................................................................ 1

   I.  Lousteau sues Holy Cross fifty years after alleged abuse by a former
       employee. ................................................................................................... 1

   II.  The district court holds Act 322's revival provision unconstitutional;
        dismisses Lousteau's claims as prescribed. ............................................. 2

ARGUMENT SUMMARY ..................................................................................... 4

ARGUMENT ......................................................................................................... 7

   I.  Louisiana Supreme Court precedent directly forecloses Lousteau's argument
       that Act 322 is constitutional. .................................................................... 7

     A.  The legislature has no power to revive a prescribed claim because doing
         so would deprive a defendant of his right to plead prescription. ............... 7

     B.  The Louisiana Supreme Court has rejected previous attempts to revive
         child sexual abuse claims ......................................................................... 9

   II.  The Louisiana Supreme Court has not adopted a "modern" due process
        analysis to replace the civil law analysis in *Elevating Boats* and *Hall*. ......... 11

     A.  *Chance* requires that constitutional issues be decided only when
         necessary; it does not change Louisiana's substantive revival
         jurisprudence ......................................................................................... 11

     B.  *All Property & Casualty Insurers* does not involve vested rights and  does
         not alter the revival analysis. .................................................................. 16

   III. Subsequent Louisiana Supreme Court case law removes any doubt that the
        district court correctly dismissed Lousteau's claims. .............................. 19

IV. Certification to the Louisiana Supreme Court is unnecessary and should be denied. ...................................................................................................22

CONCLUSION ............................................................................................27

CERTIFICATE OF SERVICE ....................................................................28

CERTIFICATE OF COMPLIANCE ...........................................................29

# TABLE OF AUTHORITIES

**Cases**

*ACS Primary Care Physicians Southwest, P.A. v. UnitedHealthcare Ins. Co.*
  26 F.4th 716, 719 (5th Cir. 2022) ................................................................. 23, 26

*American Waste & Pollution Control Co.*
  597 So. 2d 1125, 1129–30 (La. App. 1st Cir. 1992) ...........................................19

*Anthony Crane Rental, L.P. v. Fruge*
  03-115 (La. 10/21/03); 859 So.2d 63......................................................................7

*Arizona v. California*
  283 U.S. 423 (1931)................................................................................................15

*Babineaux v. Judiciary Comm'n*
  341 So. 2d 396, 400 (La. 1976) ............................................................................18

*Barnes v. Moore*
  970 F.2d 12, 14 n. 2 (5th Cir. 1992) ...................................................................14

*Barras v. O'Rourke*
  2019-412 (La. App. 3 Cir. 12/18/19), 287 So. 3d 817, 820 ...............................19

*Board of Comm'rs v. Dept. of Natural Resources*
  496 So.2d 281, 291 (La. 1986) .............................................................................17

*Bouterie v. Crane*
  616 So.2d 657, 659, n.15 (La. 1993) ................................................... 7, 10, 14, 24

*California Progressive Sec. Ins. Co. v. Foster*
  97-2985 (La. 4/23/98), 711 So. 2d 675, 689 n. 19................................................19

*Cameron Parish School Board v. ACandS, Inc.*
   96-0895 (La. 1/14/97), 687 So. 2d 84.............................................................3, 14

*Campbell v. Holt*
   115 U.S. 620, 624 (1885).........................................................................5

*Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*
   98–0601 (La.10/20/98), 720 So.2d 1186, 1199.....................................................15

*Chance v. American Honda Motor Co.*
   635 So. 2d 177 (La.1994) ............................................................. passim

*Chase Securities Corp. v.* Donaldson
   325 U.S. 304 (1945).............................................................................5

*Communist Party of U.S. v. Subversive Activities Control Bd.*
   367 U.S. 1 (1961)...............................................................................15

*Doe v. McKesson*
   141 S. Ct. 48, 51 (2020)........................................................................23

*Doe v. Soc'y of the Roman Cath. Church*
   2022-00829 (La. 10/4/22), 347 So. 3d 148.........................................................3

*Ebinger v. Venus Const. Corp.*
   10-2516, p. 7 (La. 7/1/11), 65 So.3d 1279, 1285) .................................................9

*Elevating Boats, Inc. v. St. Bernard Parish*
   00-3518 (La. 9/5/01), 795 So.2d 1153, 1164................................................ passim

*Falgout v. Dealers Truck Equip. Co.*
   98-3150 (La. 10/19/99), 748 So.2d 399, 407........................................... 7, 18, 24

*Hall v. Hall*
   516 So. 2d 119, 120 (La. 1987) ..................................................... passim

*Hopkins v. Lincoln Trust Co*.
135 N.E. 267, 267 (N.Y. 1912)...........................................................12

*In re Gabriel Investment Grp., Inc.*
24 F.4th 503, 507-08 (5th Cir. 2022)....................................................26

*In re Katrina Canal Breaches Litig.*
613 F.3d 504, 509 (5th Cir. 2010) ........................................................22

*Jefferson v. Lead Industries Ass'n, Inc.*
106 F.3d 1245, 1247 (5th Cir. 1997) ........................................... 22, 25

*Johnson v. Teva Pharmaceuticals USA, Inc.*
758 F.3d 605, 614-15 (5th Cir. 2014)...................................................25

*Liverpool, New York & Philadelphia S.S. Co. v. Commissioners*
113 U.S. 33 (1885)...............................................................................15

*Lott v. Haley*
370 So.2d 521, 523 (La. 1979) ............................................................14

*Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd.*
97–0752 (La.10/31/97), 701 So.2d 130, 132 .......................................15

*Louisiana Health Service & Indemnity Co. v. McNamara*
561 So. 2d 712, 718 (La. 1990) .............................................................9

*Matherne v. Gray Ins. Co.*
95–0975 (La.10/16/95), 661 So.2d 432, 434 .......................................15

*McMillan v. Amazon.com, Inc.*
983 F.3d 194, 202-03 (5th Cir. 2020)...................................................26

*Morial v. Smith & Wesson Corp.*
  2000-1132 (La. 4/3/01), 785 So. 2d 1, 13..............................................19

*Rescue Army v. Municipal Court of City of Los Angeles*
  331 U.S. 549, 571 (1947)........................................................................15

*Ring v. State, Dep't of Transp. & Dev.*
  2002-1367 (La. 1/14/03), 835 So. 2d 423, 426......................................15

*Rousselle v. Plaquemines Parish School Bd.*
  633 So.2d 1235, 1246-47 (La. 1994)......................................................19

*Sam Doe vs. Society of the Roman Catholic Church*
  No. 2020-4792, (15th J.D.C. Jan. 19, 2022)............................................3

*Segura v. Frank*
  630 So. 2d 714, 728 (La. 1994) ...................................................... 17, 19

*State v. All Property & Casualty*
  2006-2030 (La. 8/25/06), 937 So. 2d 313.................................... passim

*State v. Fleming*
  2001–2799 (La.6/21/02), 820 So.2d 467, 470......................................15

*Texas v. United States*
  809 F.3d 134, 178 n.158 (5th Cir. 2015) ..............................................11

*United States v. Bueno*
  585 F.3d 847, 850 n.3 (5th Cir. 2009) ..................................................11

*Whitaker v. Collier*
  862 F.3d 490, 496 n.14 (5th Cir. 2017) ................................................11

*White v. West Carroll Hosp., Inc.*
  613 So.2d 150, 157 (La.1992) ...............................................................15

## Statutes

La. R.S. 22:629 ................................................................................17

La. R.S. § 9:2800.9 ...........................................................................1

## Other Authorities

La. Civ. Code article 6 .......................................................... 3, 12, 13, 17

La. Civ. Code article 197 ...................................................................20

La. Civ. Code article 3469 ..............................................................9, 10

La. Civ. Code article 3492 ..............................................................1, 14

## Rules

Fifth Circuit Rule 28.2.1 .................................................................. ii

## STATEMENT OF THE CASE

### I.    Lousteau sues Holy Cross fifty years after alleged abuse by a former employee.

John Lousteau alleges that he was sexually abused, as a minor, in the 1960s by Stanley Repucci, a then-member of the Brothers of Congregation of Holy Cross, Moreau Province, Inc.[2] Repucci is not a named defendant; he has not worked for Holy Cross in over fifty years and he is presumed dead.[3] Lousteau claims that Holy Cross is vicariously liable for Repucci's actions as his employer. Under the prescriptive period that applied when Lousteau was allegedly abused, Lousteau's claims prescribed no later than 1970.[4] That much is undisputed.

In the fifty years since the alleged abuse, the Louisiana legislature has revised the prescriptive period that applies to child sexual abuse claims several times. Most recently, in 2021, the legislature passed Act 322, which amended Revised Statute § 9:2800.9 to eliminate the prescriptive period for child sexual abuse claims entirely. Act 322 also "revived" claims that had already prescribed for a three-year period. This gave plaintiffs, like Lousteau, a window to bring their long-ago prescribed

---

[2] *See* ROA.8–18 & ROA.19–20. Repucci was also a teacher at Holy Cross college.  Appellees are collectively referred to as "Holy Cross."

[3] ROA.41.

[4] La. Civ. Code art. 3492.  ROA.22-30407.851 ("Lousteau's cause of action against Holy Cross prescribed at some point in 1970 at the latest.")

cause of action. Relying on Act 322's revival provision, Lousteau sued Holy Cross for damages arising from his alleged abuse by Repucci in the 1960s.

## II. The district court holds Act 322's revival provision unconstitutional; dismisses Lousteau's claims as prescribed.

Holy Cross moved to dismiss Lousteau's claims as prescribed and argued, among other things, that Act 322's revival of Lousteau's claims violates the Louisiana Constitution.[5] After finding that the legislature intended Act 322 to revive Lousteau's claims, the district court turned to whether that revival was constitutional.[6] The court summarized the dispositive issue as follows: "When determining whether a legislative change to a prescriptive period can operate retroactively (that is, apply to causes of action that accrued before the change went into effect) within constitutional limits, the pivotal issue that permeates the jurisprudence in this state is whether the change will disrupt a vested right."[7] After surveying Louisiana case law, the court matter-of-factly observed "[t]he notion that it would be constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions, albeit often in dicta."[8]

---

[5] ROA.290–392.

[6] ROA.867.

[7] ROA.871.

[8] ROA.872.

Despite this consensus, the district court went on to consider whether the Louisiana Supreme Court's decision in *Chance v. American Honda Motor Co.*[9] signaled a departure.[10] As discussed below, the *Chance* court was compelled to decide a revival question based on legislative intent and statutory interpretation, rather than on constitutional grounds.[11] That the *Chance* court did not outright reject revival caused the district court to make an *Erie* guess as to whether revival remained unconstitutional under Louisiana law.[12]

The result of the district court's *Erie* determination was the announcement of the same rule the Louisiana Supreme Court has stated on countless occasions before: The legislature has no power to revive a prescribed claim.[13] Echoing the analysis of other Louisiana Supreme Court cases in all meaningful respects,[14] the district court

---

[9] 635 So. 2d 177 (La. 1994).

[10] ROA.873–876. The district court also discussed a related case, *Cameron Parish School Board v. ACandS, Inc.,* 96-0895 (La. 1/14/97), 687 So. 2d 84, that was decided on identical grounds as *Chance*. This brief often refers to *Chance* as a shorthand for both decisions.

[11] *See* infra.

[12] ROA.876. Lousteau asserts that the district court failed to acknowledge *Sam Doe vs. Society of the Roman Catholic Church*, No. 2020-4792, (15th J.D.C. Jan. 19, 2022), a case holding that Act 322 successfully revived a child sexual abuse claim. Appellant Br. at 4. The case was recently vacated and remanded by the Louisiana Supreme Court with instructions to engage in the analysis required by Louisiana Civil Code article 6. *See Doe v. Soc'y of the Roman Cath. Church*, 2022-00829 (La. 10/4/22), 347 So. 3d 148.

[13] ROA.877.

[14] *Compare Elevating Boats, Inc. v. St. Bernard Parish*, 00-3518 (La. 9/5/01), 795 So.2d 1153 ("[A]fter the prescriptive period on an obligation has run, an obligor gains the right to plead prescription. In such a situation, that right to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would 'modify or suppress the effects of a right already acquired.'").

remarked that "[o]nce liberative prescription accrues, the right to plead the defense is absolute, complete, unconditional, and independent of a contingency, and it is therefore vested."[15] As the Court concluded in its *Erie* guess, "reviving a prescribed cause of action, and depriving a defendant of his right to plead prescription as a defense, would disrupt a vested right, and therefore does not comport with due process under Louisiana law."[16] The district court's judgment dismissing Lousteau's claims with prejudice should be affirmed.[17]

## ARGUMENT SUMMARY

Lousteau's claims are foreclosed by *Hall v. Hall*,[18] *Elevating Boats, Inc. v. St. Bernard Parish*,[19] and other Louisiana Supreme Court decisions holding, generally and specifically, that "the Legislature is without the authority to revive a prescribed claim."[20] Directly on point, *Hall* held that the legislature "could not" revive a child sexual abuse claim.[21] These authorities require the dismissal of Lousteau's claims as prescribed

---

[15] ROA.879.

[16] ROA.879.

[17] ROA.882.

[18] 516 So.2d 119, 120 (La. 1987).

[19] 795 So. 2d 1153 at 1164.

[20] *Id.*

[21] *Hall*, 516 So.2d at 120.

To avoid that result, Lousteau argues that the Louisiana Supreme Court's case law forbidding revival have been eroded by, among other things, various United States Supreme Court decisions and Louisiana cases allegedly adopting a federal due process analysis.[22] The lengthy discussion is largely beside the point, focused as it is on federal constitutional law and cases outside the revival setting. As explained by the district court, the suggestion that Louisiana has adopted a "new modern approach"[23] to revival that is rooted in federal due process is "untenable given the repeated references in Louisiana's jurisprudence—which deals with the civilian concept of prescription not the common law concept of a statute of limitations—indicating that reviving a prescribed claim is not permissible under Louisiana law."[24]

To establish that his claims were constitutionally revived, Lousteau must anchor this alleged national due process trend in Louisiana case law and his effort to do so is ultimately unpersuasive. *Chance v. American Honda Motor Co.*,[25] cited by

---

[22] Appellant Br. at 9–18

[23] Appellant Br. at 12.

[24] ROA.868. The Louisiana Supreme Court has had many chances to adopt, for instance, the United States Supreme Court's decisions in *Campbell v. Holt*, 115 U.S. 620, 624 (1885) and *Chase Securities Corp. v. Donaldson*, 325 U.S. 304 (1945). Those decisions held that the federal due process clause does not forbid the revival of a claim after a common law statute of limitations has run. *Chase Securities* was decided in 1945 and *Campbell* is even more ancient. Both were decided before *Hall*, *Elevating Boats*, and nearly every other case relied on by the district court. Yet they have not been adopted in the revival setting. The contention that the 1974 amendments to the Louisiana Constitution are a rebuke to vested rights fails for similar reasons. Appellant Br. at 16–18. The Louisiana Supreme Court has found nothing worth mentioning about the 1974 amendments in the many revival cases it has decided since the Constitutional Convention.

[25] 635 So. 2d 177 (La. 1994).

Lousteau as the "inevitable next step in the evolution of Louisiana's retroactivity jurisprudence,"[26] is not a departure from Louisiana's substantive jurisprudence barring revival. The most that can be said of *Chance* is that the Louisiana Supreme Court now requires that revival cases—like other cases implicating constitutional law—be decided on non-constitutional bases when possible. *Chance* did not change the Court's longstanding position prohibiting revival when such issues are necessary for decision.

*State v. All Property & Casualty*,[27]—the other linchpin in Lousteau's argument—does not involve revival at all. The decision analyzed the *extension* of a prescriptive period, an uncontroversial prospect that does not affect vested rights. The question before the Court in *All Property* was whether the extension impaired insurers' rights under the *contracts* clause—an inquiry that is distinct from (and more deferential than) the Court's traditional vested rights analysis. The Court had no occasion to discuss whether the insurers' vested right to plead prescription was deprived, much less to throw over its vested rights analysis.

Neither *Chance* nor *All Property* makes any over change Louisiana's well-settled substantive law forbidding revival and the Louisiana Supreme Court has not

---

[26] Appellant Br. at 18.

[27] 2006-2030 (La. 8/25/06), 937 So.2d 313

interpreted them that way. To the contrary, *Succession of Lewis*,[28] a recent Louisiana

Supreme Court case, demonstrates that Louisiana's revival case law is settled.  For

that reason, the Court should deny certification to the Louisiana Supreme Court and

affirm the opinion below.

## ARGUMENT

## I.    Louisiana Supreme Court precedent directly forecloses Lousteau's argument that Act 322 is constitutional.

### A.    The legislature has no power to revive a prescribed claim because doing so would deprive a defendant of his right to plead prescription.

Lousteau's claims are foreclosed by an unbroken line of Louisiana Supreme

Court cases holding that the legislature does not have the power to revive an already-

prescribed claim.[29] This rule has its roots in Louisiana's unique civil law origins.  In

*Elevating Boats, Inc. v. St. Bernard Parish*, the Court quoted the civil law historian

---

[28] *Succession of Lewis*, 2022-00079 (La. 10/1/22), --- So. 3d ---, slip op. available at 2022 WL 12360366.

[29] *Elevating Boats, Inc. v. St. Bernard Parish*, 00-3518 (La. 9/5/01), 795 So.2d 1153, *overruled on other grounds by Anthony Crane Rental, L.P. v. Fruge*, 03-115 (La. 10/21/03); 859 So.2d 63 ("[W]e have noted that the Legislature is without the authority to revive a prescribed claim"); *Falgout v. Dealers Truck Equip. Co.*, 98-3150 (La. 10/19/99), 748 So. 2d 399, 407 ("When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees"); *Hall v. Hall*, 516 So.2d 119, 120 (La. 1987) (holding that the "enactment of that article [3469] could not revive the already prescribed action."); *Bouterie v. Crane*, 616 So.2d 657, 659, n.15 (La. 1993) ("Bouterie cannot benefit from the 1992 amendment because it could not operate retroactively to revive an already prescribed cause of action."). *See also* ROA.872 ("The notion that it would be constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions, albeit often in dicta.")

Marcel Planiol when explaining the civilian basis for the rule:  "When a law modifies the duration of a prescription, either to  lengthen it or to shorten it, prescriptions already accrued are not disturbed by it, but those which are running are affected by the change."[30]

In other words, civil law distinguished between the forbidden revival of an already-prescribed claim and the permissible *extension* of a prescriptive period. "[T]he application of a new, extended prescriptive period does not negatively affect any rights that have accrued in favor of any party."[31] But the rule allowing the *extension* of prescriptive period "applies only to those prescriptive periods still running on the date of the statute's enactment," *i.e.* when a claim has yet to prescribe.[32] The revival of an already prescribed claim poses a different problem.

> [A]fter the prescriptive period on an obligation has run, an obligor gains the <u>right</u> to plead prescription. In such a situation, that <u>right</u> to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired." 1 Planiol, supra at § 243.[33]

---

[30] *Elevating Boats*, 795 So.2d at 1163.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 1164.

Explaining that these civilian principles were consistent with Louisiana law, the *Elevating Boats* court concluded, "the Legislature is without the authority to revive a prescribed claim."[34]

While serving on the Louisiana Supreme Court, then-Justice (now-Fifth Circuit Judge) Dennis explained the underlying basis for this rule in different, but similarly absolutist, terms: "The patrimony of the obligor is increased when a claim prescribes, and his right to plead prescription in defense to a claim on the obligation is itself property that *cannot be taken from him*."[35] Thus, the Louisiana Supreme Court has made clear, many times, that legislative attempts to revive a prescribed claim are absolutely barred under Louisiana law.

### B.     The Louisiana Supreme Court has rejected previous attempts to revive child sexual abuse claims.

That uncompromising analysis is demonstrated by *Hall v. Hall*,[36] a Louisiana Supreme Court case that directly speaks to Lousteau's position. In *Hall*, the appeals court held that Louisiana Civil Code article 3469, suspending prescription between minors and caretakers, applied retroactively to revive an already-prescribed sexual

---

[34] Id.

[35] *Louisiana Health Service & Indemnity Co. v. McNamara*, 561 So. 2d 712, 718 (La. 1990); *See also Succession of Lewis*, 2022-00079 (La. 10/1/22), 2022 WL 12360366 at * 6 (stating that the extension of a prescriptive period "may not operate to disturb a vested right." (quoting *Ebinger v. Venus Const. Corp.*, 10-2516, p. 7 (La. 7/1/11), 65 So.3d 1279, 1285)). Justice Dennis's statements were recently affirmed by the Louisiana Supreme Court in *Succession of Lewis*, 2022-00079 (La. 10/1/22), --- So. 3d ---, slip op. available at 2022 WL 12360366, at *6.

[36] 516 So.2d 119, 120 (La. 1987).

abuse claim.[37] In a terse opinion, the Supreme Court found that the new, more favorable statute was of no use to the alleged victim because "plaintiff's cause of action was barred by liberative prescription prior to January 1, 1983, when La. Civ. Code art. 3469 became effective. The enactment of that article could not revive the already prescribed action."[38]

 *Hall* unambiguously holds that the legislature does not have the power to and "could not revive" a prescribed child sexual abuse claim. This was not dicta by the *Hall* court and the decision did not rest on the lack of a clear legislative statement concerning revival—Lousteau's after-the-fact justification for *Hall*'s result.[39] *Hall* contains no reference to legislative intent and there is no textual basis to conclude that intent was relevant to the Court's decision. The Louisiana Supreme Court would *later*, in *Chance v. American Honda Motor Co.*, require a clear legislative statement that a statute intends to revive a claim as a prerequisite to passing on a statute's

---

[37] *Id.*

[38] S*ee id.* Several years later, the Louisiana Supreme Court once again made clear that a plaintiff with an otherwise-prescribed claim for child sexual abuse may not rely on legislation to revive a claim. In *Bouterie v. Crane,* 616 So.2d 657, 659 (La. 1993), the Court held that the c*ontra non valentem* doctrine tolled prescription for a victim. In reaching its decision, the Court stated stated that a favorable amendment to the prescription statute could not benefit the plaintiff "because it could not operate retroactively to revive an already prescribed cause of action." *See id.* at n. 15 (emphasis supplied) (citing *Hall v. Hall,* 516 So.2d 119 (La. 1987)).

[39] Appellant Br. at 24 & 25 n.25 ("[A] majority of the cases relied upon by the district court … involved pure applications of the Article 6 interpretive analysis and its surrounding jurisprudence in the absence of a clear and unequivocal legislative intent to divest vested rights and/or impair contractual obligations." (citing *Hall* and other cases)).

constitutionality.[40] But as an explanation of *Hall*'s holding, Lousteau's attempt to graft the analysis of later cases onto *Hall* rings hollow.

On the contrary, the *Hall* court understood the lower court's decision to squarely present revival and its holding that the legislature "could not" revive the claim was an indispensable part of the Court's opinion.[41] Like the plaintiff in *Hall*, Lousteau cannot show that his already-prescribed claim for child sexual abuse was constitutionally revived.

## II. The Louisiana Supreme Court has not adopted a "modern" due process analysis to replace the civil law analysis in *Elevating Boats* and *Hall*.

### A. *Chance* requires that constitutional issues be decided only when necessary; it does not change Louisiana's substantive revival jurisprudence.

The only way for Lousteau to escape the clear import of *Hall* and *Elevating Boats* is to claim that subsequent decisions are a radical departure. That effort begins with Lousteau's position that *Chance v. American Honda Motor Co.* is a reevaluation of the Court's vested rights jurisprudence that rejects the settled bar against revival.[42] The argument fundamentally misunderstands *Chance*'s reliance on

---

[40] *See Chance v. American Honda Motor Co.*, 635 So. 2d 177 (La. 1994), discussed *infra.*

[41] At most, the Court's holding in *Hall* that a prescribed claim cannot be revived is an alternative holding. In the Fifth Circuit, "alternative holdings are binding precedent and not *obiter dicta*." *Whitaker v. Collier*, 862 F.3d 490, 496 n.14 (5th Cir. 2017) (quoting *United States v. Bueno*, 585 F.3d 847, 850 n.3 (5th Cir. 2009)); *see also Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015).

[42] Appellant Br. at 18–20.

the well-trodden jurisprudential rule that courts should only decide constitutional issues when necessary. Finding revival unnecessary to its decision in *Chance*, the Court left its underlying vested rights decisions intact, and should not be interpreted otherwise.

The question before the Court in *Chance* was whether a statute tolling prescription for minors with disabilities revived an already-prescribed claim.[43] Far from softening its stance on revival, the Court affirmed its longstanding hostility by adopting then-Judge Cardozo's polemic that revival is "extreme," "drastic," and should not be "deduced from words of doubtful meaning."[44] Keeping with Judge Cardozo's admonition, the Court avoided the substantive revival issue and decided the case based on statutory grounds.[45]

But the decision to resolve *Chance* based on statutory intent was not an "acknowledgement that Louisiana law does not absolutely bar revival of prescribed claims."[46] The Court's statutory analysis was *compelled* by Louisiana Civil Code Article 6 and a related canon of statutory construction. Civil Code Article 6 directs

---

[43] *Chance,* 635 So. 2d at 178

[44] *Id.* (quoting *Hopkins v. Lincoln Trust Co.*, 135 N.E. 267, 267 (N.Y. 1912)).

[45] *Id.* 178-79.

[46] Appellant Br. at 19.

courts to legislative intent when analyzing a statute's retroactivity.[47] "Guided by the principles established in article 6," the Court required, at the very least, a clear and unequivocal expression of intent by the legislature for such an "extreme exercise of legislative power," (*i.e.* revival).[48] Finding that the legislature never meant for the statute to revive claims, the Court easily set aside the plaintiff's argument that it did.[49]

In doing so, the *Chance* court did not "leave open" whether the legislature had authority to revive prescribed claims.[50] That question had been answered years earlier in *Hall*.[51] The Court simply declined to "reach the issue," because deciding the case on non-constitutional grounds would achieve the same result:

> Having found the required intent absent here, we do not reach the issue of whether the legislature has the authority to revive prescribed causes of action. Central to this determination is whether the right to plead the defense of prescription is a constitutionally vested right. Whether the right is vested or not, the result reached in this case would be the same, *i.e.* Honda's exception of prescription would be maintained.[52]

---

[47] "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is legislative expression to the contrary."

[48] *Chance,* 635 So. 2d at 178

[49] *Id.* at 179.

[50] Appellant Br. at 19.

[51] *Hall*, 516 So.2d at 120 (La. 1987) (holding that the "enactment of that article [3469] could not revive the already prescribed action.").

[52] *Id.* at 179, n. 6.

Thus, the Court "adhere[d] to the well-established principle that a court should not rule on the constitutionality of legislation unless it is <u>necessary</u> for the resolution of the matter before it."[53]

It would be a mistake to consider *Chance*'s use of this "well-established principle" as changing the Court's position on the substantive merits of revival, for several reasons. First, the Fifth Circuit is hostile to arguments that binding precedent has been overruled *sub silentio*.[54] Other than Justice Hall's concurrence—opining that the Court's underlying case law forbidding revival remains intact[55]—the *Chance*

---

[53] *Id*. *Cameron Par. Sch. Bd. v. ACandS, Inc.,* 96-0895 (La. 1/14/97), 687 So. 2d 84, another case relied on by Lousteau, likewise rests on the prudential concern that cases should be decided, when possible, on non-constitutional grounds. Considering whether article 3492 revived an asbestos claim, the Court began by reciting this rule of decision: "This court does not generally reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case." *Id*. at 87. As in *Chance*, after finding that the legislature did not intend to revive claims to begin with, it was unnecessary for the Court "to reach the constitutional issue of whether the legislature has the authority to revive prescribed causes of action." *Id*. at 93. Thus, *Cameron Parish* is distinguishable for the same reasons as *Chance*.

[54] *See, e.g., Barnes v. Moore*, 970 F.2d 12, 14 n. 2 (5th Cir. 1992) (declining to interpret a decision "as having overruled, *sub silentio*, longstanding Supreme Court precedent governing challenges to the facial constitutionality of statutes.")

[55] *Chance,* 635 So. 2d at 179–80. Justice Hall summarized the current state of the vested rights doctrine: "[A]mendments to procedural laws are not retroactively applied if doing so would unconstitutionally disturb vested rights. *Lott v. Haley*, 370 So.2d 521, 523 (La. 1979). The question thus becomes whether a defendant's right to assert the peremptory exception of prescription is a vested right. *Hall v. Hall*, 516 So.2d 119 (La. 1987), answers this question in the affirmative. *See also Bouterie v. Crane*, 616 So.2d 657, 664 n. 15 (La. 1993)." *Id*. Justice Hall would not apply the jurisprudential rule used by the plurality in *Chance* and would instead find the case foreclosed by *Hall*. But nothing in *Chance* implies that the full Court would come to a different result had it reached the substantive merits of revival. The plurality in *Chance* leaves Justice Hall's discussion of vested right unrebutted. As a result, it is not surprising that a later Supreme Court decision would cite Justice Hall's concurrence with approval. *See Succession of Lewis*, 2022 WL 12360366, at *6, discussed *infra*.

court fails to even mention the merits of revival.[56] If the Court meant to signal a sea change in Louisiana's substantive vested rights doctrine, it did so utterly without comment.

Second, the Louisiana Supreme Court has "repeatedly and consistently" applied the same prudential rule against unnecessarily deciding cases on constitutional grounds in a variety of settings.[57] The Court's practice, in fact, is "never to anticipate a question of constitutional law in advance of the necessity of deciding it,"[58] and for sensible reasons. This "policy of judicial restraint" reflects the Supreme Court's balancing of separation of powers in a constitutional system;[59] it is

---

[56] *Id.* at 178.

[57] *Ring v. State, Dep't of Transp. & Dev.*, 2002-1367 (La. 1/14/03), 835 So. 2d 423, 426. *See also State v. Fleming*, 2001–2799 (La.6/21/02), 820 So.2d 467, 470; *Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98–0601 (La.10/20/98), 720 So.2d 1186, 1199; *Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd.*, 97–0752 (La.10/31/97), 701 So.2d 130, 132; *White v. West Carroll Hosp., Inc.*, 613 So.2d 150, 157 (La.1992).

[58] *Matherne v. Gray Ins. Co.*, 95–0975 (La.10/16/95), 661 So.2d 432, 434. *See also Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1 (1961) (citing *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners*, 113 U.S. 33 (1885)); *Arizona v. California*, 283 U.S. 423 (1931).

[59] The foundations of this policy derive from "the delicacy of that function, particularly in view of possible consequences for others stemming also from constitutional roots; the comparative finality of those consequences; the consideration due to the judgment of other repositories of constitutional power concerning the scope of their authority; the necessity, if government is to function constitutionally, for each to keep within its power, including the courts; the inherent limitations of the judicial process, arising especially from its largely negative character and limited resources of enforcement; withal in the paramount importance of constitutional adjudication in our system." *Ring*, 835 So. 2d at 426 (quoting *Rescue Army v. Municipal Court of City of Los Angeles*, 331 U.S. 549, 571 (1947)).

not—as Lousteau would have it—a sign that the Court has reconsidered the underlying merits of a constitutional dispute.

Finally, like many other authorities relied on by Lousteau, *Chance* pre-dates *Elevating Boats*.[60] *Chance* cannot be, as Lousteau claims, "the culmination of both a national and Louisiana jurisprudential shift away from an exception riddled, not absolute 'vested rights' anti-retroactivity doctrine approach"[61] when *Chance* arrives *before* the case it is meant to displace. To the contrary, if, for the sake of argument, *Chance* left open whether the legislature had the power to revive claims, *Elevating Boats* resolved the matter for good when decided ten-years later: "[T]he Legislature is without the authority to revive a prescribed claim."[62]

### B.   *All Property & Casualty Insurers* does not involve vested rights and does not alter the revival analysis.

*State v. All Property & Casualty Insurers*[63] also does not alter the Louisiana Supreme Court's vested rights analysis. In *All Property*, a group of insurers argued that the legislative *extension* of the prescriptive period for Hurricane Katrina and Rita insurance claims impaired their "contractual relationship with their

---

[60] *See* Appellant Br. at 9–18 (citing numerous authorities pre-dating *Elevating Boats* allegedly indicating a legal consensus toward the constitutionality of revival).

[61] Appellant Br. at 9.

[62] *Elevating Boats*, 795 So.2d at 1164.

[63] 2006-2030 (La. 8/25/06), 937 So.2d 313.

policyholders."[64] The case involved the application of the Court's *contract clause*

jurisprudence only; it is not a landmark reconsideration of revival or vested rights.[65]

The Court's traditional contract clause analysis, applied in *All Property*,

involves a rational basis review—a stark contrast to the absolute bar the Court has

applied to revival.[66] While denying the insurers' contract clause claims, the Court

remarked in a footnote (also in dicta) that its analysis "would be the same" had the

---

[64] *Id.* at 319. Notably, the legislation did not involve revival because the Acts "were signed by the governor, on June 29 and June 30 of 2006, prior to the expiration of the former one-year prescriptive period of La. R.S. 22:629 for these claims." *Id.* at 321; *see also id.* at 323 ("Here, the legislation at issue has the effect of extending a prescriptive period."). Recognizing that they had no basis to invoke the Louisiana Supreme Court's vested rights doctrine, the insurers in *All Property* failed to raise revival or vested rights in their briefing. *See* Original Br. Defendants-Respondents, Applicant, v. All Property and Casualty Insurance Carriers Authorized and Licensed to Do Business in the State of Louisiana., 2006 WL 2840042 (La.).

[65] The only mention of vested rights in *All Property* comes in the Court's recitation of the legal standard. Following the required Article 6 analysis and finding that the legislature intended to extend prescription, the Court set about to "determine whether the Acts impair contractual obligations *or* disturb vested rights such that they must not be applied retroactively." *All Property*, 937 So.2d at 323. Having quoted this disjunctive test, the Court went on to analyze only the prong related to the insurers' alleged contractual impairment.

[66] Despite Lousteau's effort to conflate vested rights and contractual impartment claims, the Louisiana Supreme Court has always analyzed these claims separately. *See e.g.*, *Segura v. Frank*, 630 So. 2d 714, 728 (La. 1994) ("Previously we determined retroactive application of Act 130 … would not disturb plaintiffs' vested rights …. Therefore the only remaining issue of constitutional law is whether retroactive application … would unconstitutionally impair … contractual obligations."). While a contractual impairment claim involves the rational basis contract clause analysis first adopted by the Louisiana Supreme Court in *Board of Comm'rs v. Dept. of Natural Resources*, 496 So.2d 281, 291 (La. 1986), the Louisiana Supreme Court has *never* gone on to examine countervailing interests that might justify displacing a defendant's vested right to plead prescription, no matter how compelling. Once the Court finds that the right to plead prescription has been impinged, that ends the inquiry. *See, e.g., Hall*, 516 So.2d at 120. Lousteau's position that Act 322 satisfies a rational basis review is therefore irrelevant to this Court's decision and should be disregarded. *See* Appellant Br. at 42–44.

insurers also raised due process concerns.[67] Because the vested rights doctrine is based in "due process guarantees,"[68] Lousteau holds up this remark as a "rejection of an absolute 'vested rights' bar … in favor of a modern due process analysis."[69] This is a clear overreading of *All Property*'s dicta.

The "absolute vested rights bar" was simply not before the Court in *All Property*. As made clear by *Elevating Boats*, the *extension* of a prescriptive period that has not yet run, like the one for Hurricane Katrina and Rita claims in *All Property*, is uncontroversial and has no impact on vested rights.[70] The Court had no occasion to (and did not) discuss whether the insurers' vested rights to plead prescription were deprived, much less throw over its vested rights analysis.

The Court's passing comments concerning due process, even as dicta, were necessarily limited to the contract impairment claim.[71] The better reading of *All Property*'s footnote is that the Court would have applied the same analysis to the

---

[67] *All Property*, 937 So.2d at 327 n.14.  There is no question that the Court's discussion of what its due process analysis "would be" in footnote 14 was dicta and unnecessary to judgment. *See* BLACK's LAW DICTIONARY 1177 (9th ed. 2009) (obiter dictum is "unnecessary to the decision in the case and therefore not precedential").

[68] *Falgout v. Dealers Truck Equip. Co.*, 98-3150 (La. 10/19/99), 748 So. 2d 399, 407

[69] Appellant Br. at 22.

[70] *Elevating Boats*, 795 So.2d at 1163 ("[T]he application of a new, extended prescriptive period does not negatively affect any rights that have accrued in favor of any party.").

[71] Due process review is dependent upon the particular right involved and impairments imposed. *Babineaux v. Judiciary Comm'n*, 341 So. 2d 396, 400 (La. 1976).  As a result, even if the Court's comments about due process were not dicta, there is no basis to conclude that the Court would apply the same contractual impairment analysis to a vested rights claim based in due process.  As noted above, the Court has always analyzed such claims differently.

contractual impairment claim no matter how the insurers attempted to characterize it (under either the due process or contracts clause); not that the Court unceremoniously changed the vested rights legal landscape by footnote during a case that did not involve vested rights at all.[72]

## III. Subsequent Louisiana Supreme Court case law removes any doubt that the district court correctly dismissed Lousteau's claims.

Based on the foregoing, the district court rightly held Act 322 unconstitutional and dismissed Lousteau's claims as prescribed.[73] If anything, the district court gave

---

[72] Lousteau claims that "on multiple occasions the Louisiana Supreme Court has upheld the constitutionality of laws which retroactively divest vested rights or impair contractual obligations." Appellant Br. at 22. While that may be true of contractual impairment claims, *see Segura v. Frank*, 630 So.2d 714 (La. 1994), the same cannot be said of vested rights claims. Of the cases cited by Lousteau, two involve claims by municipalities or state agencies that are not protected against retroactive impairments, *Morial v. Smith & Wesson Corp.*, 2000-1132 (La. 4/3/01), 785 So. 2d 1, 13; *Rousselle v. Plaquemines Parish School Bd.*, 633 So.2d 1235, 1246-47 (La. 1994); one involves the prospective application of legislation only, *California Progressive Sec. Ins. Co. v. Foster*, 97-2985 (La. 4/23/98), 711 So. 2d 675, 689 n. 19 ("We are not faced with the issue of retroactivity, since Act 1476 applies only prospectively."); *id.* at 22 ("[W]here the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not" apply); and the final case involves the legislature's repeal of the prescriptive period for challenging certain authentic acts that the Supreme Court had declared "absolute nullities," *Barras v. O'Rourke*, 2019-412 (La. App. 3 Cir. 12/18/19), 287 So. 3d 817, 820. None of these cases involves the retroactive deprivation of a vested right and none support Lousteau's claims.

[73] Many of the arguments raised by Lousteau to discredit the district court are so far afield as to require little discussion. No Louisiana court has remotely held that "defendants have no due process protected 'right' to assert a legislatively created prescription period absent entry of a final, non-appealable judgment." Appellant Br. at 42. As made clear in *Elevating Boats*, the "right to plead prescription has already accrued" when "the prescriptive period on an obligation has run"– not when a defendant has obtained a judgement. *See Elevating Boats*, 795 So. 2d at 1164. In this context, the Louisiana Supreme Court clearly used the terms vested and accrued interchangeably. *See id.* As such, Lousteau's argument that prescription does not vest upon accrual is easily set aside. As the district court held, "[o]nce liberative prescription accrues, the right to plead the defense is 'absolute, complete, unconditional, and independent of a contingency,' and it is therefore vested." ROA.879 (quoting *In re American Waste & Pollution Control Co.*, 597 So. 2d 1125, 1129–30 (La. App. 1st Cir. 1992)).

too much weight to the argument that *Chance* placed the vested rights doctrine into upheaval.[74] As shown above, *Chance* did not leave open whether the right to plead prescription is a vested right. The case declined to reach the issue as unnecessary to judgment but left the underlying substantive law forbidding revival intact. Because the settled, substantive law on revival is that "the Legislature is without the authority to revive a prescribed claim,"[75] the district court's *Erie* guess was ultimately unnecessary. Lousteau's claims are directly foreclosed by *Hall* and other cases.

Subsequent Louisiana Supreme Court case law makes clear that the district court need not have been concerned that the law of revival was unsettled. In *Succession of Lewis*,[76] the Court considered whether Louisiana Civil Code article 197 applied retroactively to deprive the heirs of a succession of the right to assert prescription. Summarizing the law applicable to revival, the Court failed to even mention *All Property*—dispelling Lousteau's view that *All Property* forever altered the vested rights analysis.[77] Certainly the Court made no attempt to perform a rational basis review. Instead, the Court doubled down on its absolutist view that

---

[74] According to the district court, *Chance* left open two questions: "whether the Supreme Court continues to view accrued prescription as a vested right, and if it is a vested right, does the Supreme Court continue to believe that the Legislature cannot take it away?" ROA.876. As explained below, *Succession of Lewis* answered both questions by explaining that the right to plead prescription is a vested right that "may not" be disturbed. *See infra*.

[75] *Elevating Boats*, 795 So.2d at 1164.

[76] *Succession of Lewis*, 2022 WL 12360366.

[77] *See id*. at *9–10 (setting forth the legal standard).

legislation establishing a new prescriptive period "may not operate to disturb a vested right."[78]

More importantly, the Court found "instructive" Justice Hall's concurrence in *Chance* opining that "the right to plead the defense of prescription was a vested right."[79] In his concurring opinion in *Chance*, Justice Hall reached this conclusion by relying on the Court's settled case law: "The question thus becomes whether a defendant's right to assert the peremptory exception of prescription is a vested right. *Hall v. Hall*, 516 So.2d 119 (La.1987), answers this question in the affirmative."[80] The Supreme Court's approval of Justice Hall's concurrence, and, by extension, of *Hall* itself, is fatal to Lousteau's claim.[81] By the Louisiana Supreme Court's own (very recent) account, Louisiana's vested rights jurisprudence is vital, unaffected by *All Property*, and requires that the district court be affirmed.

---

[78] *Id.* at *6 (quotation omitted).

[79] *Id.* at *10.

[80] *Chance*, 635 So.2d at 180 (emphasis added).

[81] The concurring opinion in *Succession of Lewis* equally supports dismissing Lousteau's claims. Chief Justice Weimer stated the prevailing law that "[b]ecause the defendant acquires the right to plead the exception of prescription [when the prescriptive period has elapsed], a change in that right constitutes a substantive change in the law as applied to the defendant and must be construed prospectively only." *Succession of Lewis*, 2022 WL 12360366, at *13.

**IV.    Certification to the Louisiana Supreme Court is unnecessary and should be denied.**

For many of the same reasons,[82] the Court should not certify questions to the

Louisiana Supreme Court. About this wholly discretionary procedure, this Court has

previously observed:

> As a general proposition we are chary about certifying questions of law
> absent a compelling reason to do so; the availability of certification is
> such an important resource to this court that we will not risk its
> continued availability by going to that well too often.  Alone, the
> absence of a definitive answer from the state supreme court on a
> particular question is not sufficient to warrant certification.  Rather, we
> must "decide the case as would an intermediate appellate court of the
> state in question if … the highest court of the state has not spoken on
> the issue or issues presented."  So, absent genuinely unsettled matters
> of state law, we are reluctant to certify.[83]

"[A]cutely aware that '[c]ertification is not a panacea for resolution of those complex

or difficult state law questions which have not been answered by the highest court

of the state,'" the Court has indicated that "certification may be advisable where

important state interests are at stake and the state courts have not provided clear

guidance on how to proceed."[84]   Even where state law is unsettled, however,

---

[82] The reasons that certification should be denied are explained in greater detail in Defendants/Appellees Response to Motion to Certify Question to Louisiana Supreme Court.

[83] *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997).

[84] *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (citations omitted).

"[c]ertification is by no means 'obligatory[.]'"[85] To the contrary, the United States

Supreme Court has indicated that certification is advisable only "[i]n *exceptional*

instances."[86]

Of the factors that inform whether certification is appropriate,[87] the lack of

"closeness of the question and the existence of sufficient sources of state law"

overwhelms the analysis here. When there is clear controlling precedent in the

decisions of the Louisiana Supreme Court, certification is simply not appropriate—

because it is not necessary. Sufficient (indeed, plentiful) sources of state law render

the question (whether the legislature has the authority to revive prescribed claims)

quite settled (it does not). The Louisiana Supreme Court *generally* has held that the

---

[85] *Doe v. McKesson*, 141 S. Ct. 48, 51 (2020) (emphasis added).

[86] *Doe v. McKesson*, 141 S. Ct. 48, 51 (2020) (emphasis added). "Our system of 'cooperative judicial federalism' [indeed] presumes federal and state courts alike are competent to apply federal and state law." *Id.* (citation omitted). Notwithstanding some potential efficiencies of the procedure, the United States Supreme Court has observed that "[f]ederal courts have only rarely resorted to state certification procedures, which can prolong the dispute and increase the expenses incurred by the parties." *Id.* (citation omitted).

[87] This Court considers: (1) The closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court. *ACS Primary Care Physicians Southwest, P.A. v. UnitedHealthcare Ins*. Co., 26 F.4th 716, 719 (5th Cir. 2022).

legislature lacks the power to revive an already-prescribed claim[88] and it *specifically* has rejected previous legislative attempts to revive child sexual abuse claims.[89]  Very recent Louisiana Supreme Court precedent in *Succession of Lewis* confirms the settled nature of the revival issue when vested rights are at stake:  Make no mistake, the Louisiana Supreme Court has recently observed, the vested rights doctrine is alive and well in Louisiana.[90]  Far from being presented with a compelling, genuinely

---

[88] *Elevating Boats,* 859 So.2d at 1164 ("[W]e have noted that the Legislature is without the authority to revive a prescribed claim"); *Falgout*, 748 So. 2d at 407 ("When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees"); *Hall*, 516 So.2d at 120 (holding that the "enactment of that article [3469] could not revive the already prescribed action."); *Bouterie*, 616 So.2d at 659, n.15 ("Bouterie cannot benefit from the 1992 amendment because it could not operate retroactively to revive an already prescribed cause of action."). *See also* ROA.872 ("The notion that it would be constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions, albeit often in dicta.").

[89] *Hall*, 516 So.2d at 120 ; *Bouterie*, 616 So.2d at 659, n.15. *See also* ROA.872 ("The notion that it would be constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions, albeit often in dicta.").

[90] *Succession of Lewis*, 2022 WL 12360366, at *6, 10, 12-13 (holding that the legislature expressly established a new peremptive period for filiation claims filed in succession proceedings, that the peremptive period applies retroactively, reasoning that because succession does not commence until the death of the decedent, the heirs have no vested right to plead peremption and, thus, no vested rights are disturbed by retroactive application of Article 197; further observing that legislation establishing a new prescriptive period "may not operate to disturb a vested right"). Notably, the Louisiana Supreme Court cited *Chance*, 635 So. 2d at 178, and singled out Justice Hall's concurrence in *Chance* as "instructive."  *Id.* at *6.

unsettled issue of state law, application of state law mandates affirming the district court's ruling without resort to certification.[91]

Discretionary certification is also particularly inappropriate as Lousteau selected the federal forum he now wishes to avoid. This Court is "slow to honor a request for certification from a party who chose to invoke federal jurisdiction."[92] This is so regardless of whether a plaintiff elects federal court in anticipation of removal.[93] As the district court noted, Lousteau elected to file his lawsuit in federal court knowing "he would be subject to a constitutional challenge under state law."[94]

---

[91] Discretionary certification is particularly inappropriate here as Lousteau selected the federal forum he now wishes to avoid. This Court is "slow to honor a request for certification from a party who chose to invoke federal jurisdiction." *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)("We do not lightly abdicate our mandate to decide issues of state law when sitting in diversity, and in the same vein '[w]e use much judgment, restraint and discretion in certifying' cases to the highest state court.'"); *accord Johnson v. Teva Pharmaceuticals USA, Inc.*, 758 F.3d 605, 614-15 (5th Cir. 2014)(concluding that certification was not warranted in light of, among other factors, the plaintiff's "decision to file suit in federal court[.]"). This is so regardless of whether a plaintiff elects federal court in anticipation of removal. *Jefferson*, 106 F.3d at 1248. As the district court noted, Lousteau elected to file his lawsuit—presenting an issue of state law—in federal court. *See* ROA.868–869 n.16 ("Lousteau filed his lawsuit in federal court relying on Act 322 which he knew would be subject to a constitutional challenge under state law."). That Lousteau is also the party requesting federal-to-state certification alone should persuade the Court to decline the request.

[92] *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)("We do not lightly abdicate our mandate to decide issues of state law when sitting in diversity, and in the same vein '[w]e use much judgment, restraint and discretion in certifying' cases to the highest state court.'"); *accord Johnson v. Teva Pharmaceuticals USA, Inc.*, 758 F.3d 605, 614-15 (5th Cir. 2014)(concluding that certification was not warranted in light of, among other factors, the plaintiff's "decision to file suit in federal court[.]").

[93] *Jefferson*, 106 F.3d at 1248.

[94] ROA.868–869 n.16

That Lousteau is also the party requesting federal-to-state certification alone should persuade the Court to decline the request.

Unlike cases which "check[] every box" of the certification list,[95] features of this case—foremost, the straightforward application of binding Louisiana Supreme Court precedent—disfavor certification. The Court should decline Lousteau's invitation to certify and, instead, should affirm the district court's educated *Erie* guess that "reviving a prescribed cause of action, and depriving a defendant of his right to plead prescription as a defense, would disrupt a vested right, and therefore does not comport with due process under Louisiana law."[96]

---

[95] *See, e.g.*, *ACS Primary Care Physicians*, 26 F.4th at 719-20 (observing that "[e]ach factor advises that we certify" the "close question" of "whether the [Texas] emergency-care statutes create an implied right of action" and underscoring, as to the third factor that "for several years in a row, the Supreme Court of Texas has decided every argued case by the end of June."); *see also In re Gabriel Investment Grp., Inc.*, 24 F.4th 503, 507-08 (5th Cir. 2022)(certifying "close, weighty questions of first impression" raised by the Texas Alcoholic Beverage Code to the Texas Supreme Court, observing that "[t]his case checks every box" given there is "no on-point caselaw to guide us" and considering that the State of Texas "by long tradition,…graciously accepts and prioritizes certified questions from this circuit.") and *In re Gabriel Investment Grp., Inc.*, 37 F.4th 1092 (5th Cir. 2022)(noting that "[w]e certified [questions] to the Supreme Court of Texas, which swiftly and unanimously answered both parts 'yes'"); *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202-03 (5th Cir. 2020)(certifying "vital and vexing" and "close question of first impression with scant on-point precedent" and rejecting counsel's argument that a state court ruling could take years, considering that the Supreme Court of Texas "graciously accepts and prioritizes certified questions") and *McMillan v. Amazon.com, Inc.*, 2 F.4th 525 (5th Cir. 2021)(reversing district court's conclusion that Amazon is a "seller" under Texas law in light of Supreme Court of Texas answer to certified question).

[96] ROA.879.

# CONCLUSION

For the reasons stated above, the district court should be affirmed.

Respectfully submitted,

*/s/ Ian L. Atkinson*
William P. Gibbens, 27225
Ian Atkinson, 31602
Benjamin O. Flaxenburg, 37682
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone:  (504) 680-6050
Facsimile:  (504) 680-6051
billy@semmlaw.com
ian@semmlaw.com
benjamin@semmlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Court and that Counsel of Record, who are deemed to have consented to electronic service in the above-referenced case, are being served on the 23rd day of November 2022 with a copy of the foregoing document via the Court's CM/ECF system.

*/s/ Ian L. Atkinson*

IAN L. ATKINSON

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 28(a)(10), 28(b), and 32(g)(1), I certify that this brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 7842 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, statement of interest, certificates of counsel, and other items exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in Microsoft Word in a proportionally spaced typeface using a plain, roman-style, 14-point font.


*/s/ Ian L. Atkinson*
IAN L. ATKINSON